[No. C073360. Third Dist. Apr. 4, 2016.]

THE PEOPLE, Plaintiff and Respondent, v.
SANTIAGO SANCHEZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II through VI of the discussion.

## Counsel

Maureen L. Fox, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Stephen G. Herndon and Peter W. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HOCH, J.**—Defendant Santiago Sanchez was convicted by jury of four sex offenses—one count of sexual penetration (Pen. Code, § 288.7, subd. (b)),[1] one count of attempted sexual intercourse (§§ 664, 288.7, subd. (a)), and two counts of lewd or lascivious conduct (§ 288, subd. (a))—committed against an eight-year-old girl, D.C.; he was convicted of two additional sex offenses—two counts of lewd or lascivious conduct (§ 288, subd. (a))—committed against D.C.'s 10-year-old sister, M.C. The jury also found defendant committed lewd or lascivious acts against more than one victim. (§ 667.61, subd. (e)(4).) The trial court sentenced defendant to serve 65 years to life in state prison and imposed other orders.

On appeal, defendant contends (1) the evidence was insufficient to establish the corpus delicti of the crime of sexual penetration; (2) the trial court abused its discretion and violated his constitutional right to due process by excluding certain evidence he claims was admissible to impeach testimony from the victims' older brother, S.S., who saw defendant's attempt to have sex with D.C. and called the police; (3) the trial court abused its discretion and violated his confrontation, due process, and jury trial rights by allowing testimony from an expert on child sexual abuse accommodation syndrome (CSAAS); (4) the prosecutor engaged in prejudicial misconduct in violation of defendant's right to due process; (5) the trial court's imposition of three consecutive life terms amounted to an unauthorized sentence and a denial of due process; and (6) the cumulative effect of the foregoing assertions of error deprived defendant of his right to due process.[2]

We affirm defendant's convictions and remand the matter for resentencing. As we explain, while there was no *direct* evidence of the specific act

---

[1] Undesignated statutory references are to the Penal Code.

[2] Defendant also requests that we review certain sealed school records to determine whether they contain any discoverable information that should have been made available to the defense. We have done so and conclude no additional information should have been made available to the defense.

of sexual penetration defendant was convicted of committing, other than his confession during interrogation, the circumstantial evidence was more than sufficient to establish the corpus delicti of the crime. The trial court did not abuse its discretion in excluding the proffered evidence purportedly relevant to impeach S.S. or by allowing the challenged CSAAS testimony. Defendant's claim of prosecutorial misconduct is forfeited by his failure to object and request a curative instruction. Nor did defense counsel's failure to so object amount to constitutionally deficient performance. Defendant's assertion of cumulative prejudice also fails.

We do, however, agree the matter must be remanded for a new sentencing hearing. While the trial court's imposition of three consecutive life terms is not unauthorized, and therefore defense counsel's failure to object to this sentence below arguably forfeits the issue on appeal, it is apparent from the record that the trial court believed it was required to impose full, separate, and consecutive terms pursuant to section 667.6, subdivision (d), and rule 4.426 of the California Rules of Court[3] that were not applicable to this case. Assuming the issue is forfeited, we conclude defense counsel's failure to object and correct the trial court's misunderstanding amounted to ineffective assistance of counsel.

## FACTS

Defendant was 19 years old and volunteering at an after-school program when he met S.S. Despite the fact defendant was seven or eight years older than S.S., the two became friends. About a month later, defendant met S.S.'s mother, C.C., at the after-school program and was invited over to their house to meet her husband, J.A., with whom defendant shared an interest in automotive repair and body work. At the house, defendant also met the other children in the household, D.C., M.C., and their younger brother, E.C. Over the course of about a year, defendant and J.A. became friends and worked on cars together. Defendant also routinely watched the children when their parents went out.

In August 2011, defendant committed the crimes involved in this case. He was 20 years old. His victims, D.C. and M.C., were eight years old and 10 years old, respectively.

### *Crimes against M.C.*

Defendant stayed the night at the family's house on August 1, 2011. While watching a movie with the children in the living room, defendant

---

[3] Undesignated rule references are to the California Rules of Court.

touched M.C. twice with his hand on her vaginal area, over her clothes, removing it about "two seconds" after M.C. told him to "stop." The next morning, defendant was asked to watch the children while C.C. went to work and J.A. went to Pick-n-Pull. He agreed. Before J.A. left, M.C. told him defendant was "bothering" her; not understanding the seriousness of the situation, J.A. told her to "just tell him to stop bothering you." That day, the children had various chores to do. Defendant contributed by helping S.S. with the yard work. As defendant watered the front lawn, M.C. passed by him on her way to get a hedge trimmer for S.S. Defendant reached out and briefly touched her chest with the back of his hand. Believing defendant did so "on purpose" because "he was smiling," M.C. told him to "stop." Defendant responded that "he wasn't doing anything wrong." When she again passed by defendant to get a shovel for S.S., defendant again reached out and briefly touched her with the back of his hand, this time on her vaginal area. M.C. again told him to "stop." Defendant again said he "didn't do anything." Defendant confirmed in his statement to police that he touched M.C.'s chest "like one time" and he touched her vaginal area "like twice," always over her clothing.

Based on these facts, as previously mentioned, defendant was convicted of two counts of committing a lewd or lascivious act on M.C., a child under the age of 14 years.[4]

### Crimes against D.C.

After defendant finished watering the lawn, the children asked to play in the swimming pool. Defendant agreed. While he and S.S. finished up the yard work, the other children went inside the house to change into swimming suits. After the children had changed, defendant went into S.S.'s bedroom to change into some shorts. The record is unclear as to whether D.C. was already in the bedroom when defendant came in, or whether she came into the room after defendant had changed. Either way, she began playing with S.S.'s guitar on the bottom bunk of the bunk beds S.S. shared with his younger brother, E.C. Defendant took the guitar away and climbed on top of her. By his own account, he pulled her swimming suit to the side to expose her vagina, and pulled up one of the leg openings of his shorts to allow him to pull out his penis. He then attempted to insert his penis into D.C.'s vagina, but was unsuccessful because his penis was not erect.

---

[4] Defendant was charged with an additional count of committing a lewd or lascivious act on M.C. based on her statement he touched her buttocks while pushing her on a swing in the yard. She also testified to this event at trial. Defendant confirmed at trial that he pushed M.C. on the swing, but denied touching her buttocks and instead claimed to have pushed her back. The jury found defendant not guilty of this offense, but guilty of the lesser included offense of simple battery. We shall discuss this offense no further.

Unbeknownst to defendant, S.S. had entered the house looking for D.C. Having seen defendant touch M.C.'s buttocks on two previous occasions, S.S. decided to keep "a closer eye on him." With this purpose in mind, S.S. entered the house quietly through the back door, "snuck around the corner to check the living room," and then "went down the hallway a little." From the hallway, S.S. saw defendant on top of D.C. on the bed. Defendant's "hip area . . . was moving up and down." D.C. told defendant to "[s]top." Defendant responded: "Just go with it." S.S. "stood there for about a minute" trying to decide what to do. He considered confronting defendant, but "figured if [he] did that, that [defendant] would leave and would most likely, probably, get away with it." Instead, S.S. left the house "to go call the cops." On his way out, S.S. told M.C. to "stay outside" and that he "would be back." He then got on his bicycle and rode to a neighbor's house. When this neighbor was not home, S.S. rode to a nearby gas station and used a stranger's cell phone to call 911.

Meanwhile, according to defendant's statement to police, he stopped his assault on D.C. shortly after it began and allowed her to go outside to play with her siblings. Defendant also told police he penetrated D.C.'s vagina with one of his fingers while giving her a piggyback ride down the hallway. His statement is unclear as to when exactly this took place, except that it happened before he tried having sex with her and she was already wearing her swimming suit. Regardless of the precise timing, defendant admitted: "I was tryin[g] to put it in there. My finger." He also admitted he succeeded in penetrating D.C.'s vagina with his finger. When asked whether it turned him on, defendant answered: "Uh, yes, a little." When asked whether it probably caused him to then try something more with D.C., defendant responded: "Yeah."

Based on these facts, as previously mentioned, defendant was convicted of one count of sexual penetration, one count of attempted sexual intercourse, and two counts of committing a lewd or lascivious act on D.C., a child under the age of 14 years.

Police arrived at the house a short time after S.S. made the call to 911. Defendant was taken into custody, advised of his *Miranda* rights,[5] and questioned. He eventually admitted to touching M.C.'s vagina and chest over her clothes, penetrating D.C.'s vagina with his finger while giving her a piggyback ride, and attempting to penetrate her vagina with his penis while on the bed. Defendant also wrote down that he "made a mistake" when he "tr[ied] to put something in [D.C.]," but he "was not thrusting" and stopped when she told him to stop. He also wrote a letter apologizing to the family for his actions.

---

[5] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

## DISCUSSION

## I

### *Sufficiency of the Evidence to Establish the Corpus Delicti of Sexual Penetration*

Defendant contends the evidence was insufficient to establish the corpus delicti of the crime of sexual penetration. He is mistaken.

■ "In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant. [Citations.] Though mandated by no statute, and never deemed a constitutional guaranty, the rule requiring some independent proof of the corpus delicti has roots in the common law. [Citation.] California decisions have applied it at least since the 1860's. [Citation.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168–1169 [119 Cal.Rptr.2d 903, 46 P.3d 372] (*Alvarez*).) "The purpose of the corpus delicti rule is to assure that 'the accused is not admitting to a crime that never occurred.' " (*People v. Jones* (1998) 17 Cal.4th 279, 301 [70 Cal.Rptr.2d 793, 949 P.2d 890] (*Jones*), quoting *People v. Jennings* (1991) 53 Cal.3d 334, 368 [279 Cal.Rptr. 780, 807 P.2d 1009] (*Jennings*).)

"The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible. [Citations.] There is no requirement of independent evidence 'of every physical act constituting an element of an offense,' so long as there is some slight or prima facie showing of injury, loss, or harm by a criminal agency. [Citation.] In every case, once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues. [Citations.]" (*Alvarez, supra,* 27 Cal.4th at p. 1171; see *People v. Robbins* (1988) 45 Cal.3d 867, 885–886 [248 Cal.Rptr. 172, 755 P.2d 355] (*Robbins*), superseded by statute on another ground as stated in *Jennings, supra,* 53 Cal.3d at p. 387, fn. 13.)

Defendant argues: "There was no evidence of count one, digital penetration of [D.C.] when she was on [defendant's] back (§ 288.7, subd. (b)), other than [defendant's] own admission, in the course of the police interrogation, that he had touched her in that way while giving her a piggyback ride." We agree

defendant's admission is the only *direct* evidence of the digital penetration. D.C. did not testify to this specific criminal act and did not reveal it in the special assault forensic evaluation (SAFE) interview. Nor did anyone else witness the crime. Nevertheless, we conclude the circumstantial evidence is more than sufficient to establish the corpus delicti of sexual penetration. In so concluding, we find three decisions of our Supreme Court to be particularly instructive.

In *Jones, supra*, 17 Cal.4th 279, the defendant and another man, Trone, abducted the victim and committed various sex offenses against her, including forcible rape and forcible oral copulation, before the defendant shot her in the head and left her to die on the side of an isolated road. (*Id.* at pp. 291–292.) The defendant admitted to police that Trone forced the victim to orally copulate him in the backseat while the defendant drove. Accordingly, in addition to murder and other crimes, the defendant was charged with forcible oral copulation as an accomplice. (*Id.* at p. 300.) However, while semen was found in and around the victim's vagina and rectal area, no semen was found in her mouth. (*Id.* at p. 302.) The defendant argued at the preliminary hearing that the prosecution had no independent evidence of the corpus delicti of forcible oral copulation. The magistrate agreed and did not hold him to answer for that crime. The defendant then filed a motion under section 995 to set aside the subsequent information that charged the defendant with forcible oral copulation notwithstanding the magistrate's ruling. The trial court denied the motion, finding the prosecution's corpus delicti burden had been met. (*Jones*, at pp. 300–301.)

Our Supreme Court agreed with the trial court, explaining: the victim "was found some 10 feet from the roadway on a dirt median. She had been shot in the head and was alive when found, but died shortly thereafter. Medical experts found bruises on her thighs, knees, legs, and perineal area. She also exhibited injuries on her hands. Results from the sexual assault kit revealed the presence of semen inside her vagina, on her external genitalia, and in her rectal area. No trace of semen was found in [the victim]'s mouth; an expert testified, however, that negative test results were not inconsistent with oral copulation because the mouth's natural rinsing processes eliminate semen. [The victim] was not wearing underpants, a brassiere, or shoes. Evidence showed she customarily wore such clothing." (*Jones, supra*, 17 Cal.4th at p. 302.) The court continued: "Keeping in mind the low threshold of proof required to satisfy the corpus delicti rule, we conclude that the magistrate erred in finding this low threshold was not met by the evidence presented at the preliminary examination. The state of the victim's clothing (no underwear or shoes) and the forensic evidence (semen in the victim's vagina and on her external genitalia and anus) indicates multiple sexual acts occurred. That the victim was forcibly abducted, beaten, shot in the head, and left by the side of the road for dead gives rise to an inference that the sexual activity that

occurred was against the victim's will. This circumstantial evidence of multiple forcible sexual acts sufficiently establishes the requisite prima facie showing of both (i) an injury, loss or harm, and (ii) the involvement of a criminal agency." (*Ibid.*) The court also rejected the defendant's argument "that the lack of evidence of the *specific* loss or harm," i.e., the fact that no semen was found in the victim's mouth, "is fatal to the establishment of the corpus delicti" of forcible oral copulation. (*Ibid.*) Relying on *Jennings, supra,* 53 Cal.3d 334, and *Robbins, supra,* 45 Cal.3d 867, which we discuss immediately below, the court held the corpus delicti requirement is "not so strict." (*Jones, supra,* 17 Cal.4th at p. 302.)

In *Jennings, supra,* 53 Cal.3d 334, the defendant, who was convicted of multiple murders, challenged an accompanying rape conviction as unsupported by sufficient evidence of the corpus delicti. (*Id.* at p. 366.) Our Supreme Court found the evidence, although "minimal," to be sufficient, explaining: "The evidence shows that the victim . . . was found, unclothed, in an irrigation canal. She had been dead several weeks. Although her body was badly decomposed, experts determined she had suffered a broken jaw. While this evidence would satisfy the corpus delicti of murder (there being evidence that she died through the involvement of a criminal agency), the evidence of rape was not strong. For example, because of the advanced state of decay, there was no evidence of seminal fluids on the body [citations], or evidence of penetration [citations]. Further, there was no evidence that the victim's clothes were arranged in such a manner as to suggest a sexual assault. [Citation.] [¶] Although the evidence of rape is thus minimal, we nevertheless deem it sufficient to satisfy the corpus delicti rule. When the body of a young woman is found unclothed in a remote locale, an inference arises that some sexual activity occurred, thus satisfying the requirement that there be some showing of a loss, injury, or harm. . . . [¶] While the inference of sexual activity is by no means the only, or even the most compelling, one in this case [citation], it nevertheless remains a *reasonable* one, at least for corpus delicti purposes. Further, it is important that the victim was found in a location where her lack of clothing was not easily explainable, that she was dead, and that she had suffered a broken jaw. From these factors, we may infer that whatever sexual activity occurred, it occurred against the victim's will. The evidence thus satisfies the second prong of the corpus delicti rule, i.e., the involvement of a criminal agency." (*Id.* at pp. 367–368.)

Similarly, in *Robbins, supra,* 45 Cal.3d 867, another murder case, our Supreme Court held the following to be sufficient independent evidence of the corpus delicti of lewd or lascivious conduct with a child: "Defendant was seen by one witness riding a motorcycle in the area of (and on the date of) the victim's disappearance, and the victim was last seen by another witness riding a motorcycle with a man matching defendant's description; no clothes were found at the scene of the crime; defendant's own experts described his

'primary diagnosis' as pedophilia; his admission of similar sexual conduct as to the very similar Texas crimes was confirmed by scientific evidence; and finally, the physical evidence of the homicide lends reliability to other aspects of defendant's confession, namely, his description of the lewd and lascivious conduct. In view of the nature of the offense and the circumstances of this case (i.e., the body was not discovered for some time, hence it was impossible to verify the sexual conduct by scientific evidence, and there were apparently no eyewitnesses to the crime) we do not believe the corpus delicti rule can be interpreted to call for more; the law does not require impossible showings." (*Id.* at p. 886.)

■ Returning to *Jones, supra,* 17 Cal.4th 279, our Supreme Court stated: "As *Jennings* and *Robbins* demonstrate, we have never interpreted the corpus delicti rule so strictly that independent evidence of every physical act constituting an element of an offense is necessary. Instead, there need only be independent evidence establishing a slight or prima facie showing of some injury, loss or harm, and that a criminal agency was involved." (*Id.* at p. 303.)

Here, defendant challenges the sufficiency of the evidence, independent of his confession, to establish the corpus delicti of sexual penetration with a child who is 10 years of age or younger. (§ 288.7, subd. (b).) Conviction of this crime requires proof that (1) the defendant engaged in "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object" (§ 289, subd. (k)(1)), and (2) the defendant did so "with a child who is 10 years of age or younger" (§ 288.7, subd. (b)). There can be no doubt the crime is sufficiently established, beyond a reasonable doubt, when his confession is considered. He admitted to intentionally penetrating D.C.'s vagina with his finger. There is no dispute D.C. was eight years old at the time. And based on defendant's statements in his confession and his conduct both before and after the penetration, i.e., touching M.C. inappropriately before the penetration and attempting to have sex with D.C. immediately thereafter, the jury could have reasonably inferred defendant's purpose in so penetrating was sexual arousal.

However, in order for defendant's confession to be considered for its full value to strengthen the case on all issues (see *Alvarez, supra,* 27 Cal.4th at p. 1171), there must be, independent of defendant's confession, "some slight or prima facie showing of injury, loss, or harm by a criminal agency" (*ibid.*). As in *Jones, supra,* 17 Cal.4th 279, *Jennings, supra,* 53 Cal.3d 334, and *Robbins, supra,* 45 Cal.3d 867, there is no direct evidence, aside from defendant's confession, that the specific prohibited act occurred. But that is

not required. In *Jones*, the prima facie showing of injury, loss, or harm was supplied by circumstantial evidence that *other* sexual acts occurred, i.e., semen in and around the vagina and rectal area and the absence of underwear and shoes on the body. (*Jones, supra*, 17 Cal.4th at p. 302.) In *Jennings*, the fact that the victim's body was found unclothed in a remote location supplied the requisite circumstantial evidence that "*some* sexual activity occurred, thus satisfying the requirement that there be some showing of a loss, injury, or harm." (*Jennings, supra*, 53 Cal.3d at p. 367, italics added.) And in *Robbins*, the lack of clothing on the body, evidence of the defendant's pedophilia diagnosis, and evidence substantiating his admission to other similar crimes supplied the prima facie showing of injury, loss, or harm. (*Robbins, supra*, 45 Cal.3d at p. 886.) In each case, circumstantial evidence that *some* sexual activity occurred, coupled with circumstantial evidence the activity was criminal, satisfied the corpus delicti requirement; the defendant's statement could then be considered for its full value to fill in the precise nature of the activity.

Here, there is a much greater showing. Unlike the foregoing murder cases, where the evidence of sexual activity was circumstantial, here, D.C. testified defendant touched her vagina on the bed. S.S. testified defendant was on top of D.C. on the bed, moving his hips up and down, while D.C. told him to "[s]top" and defendant responded: "Just go with it." M.C. testified defendant also touched her inappropriately, supplying direct evidence of the crimes committed against her and circumstantial evidence defendant also engaged in sexual conduct with D.C. (See Evid. Code, § 1108, subd. (a); see also *People v. Merriman* (2014) 60 Cal.4th 1, 40 [177 Cal.Rptr.3d 1, 332 P.3d 1187] [evidence of sexual assault cross-admissible under Evid. Code, § 1108 to show the defendant's propensity to commit rape and forcible oral copulation]; see generally *People v. Catlin* (2001) 26 Cal.4th 81, 145 [109 Cal.Rptr.2d 31, 26 P.3d 357] [other crimes evidence admissible to prove corpus delicti].) Thus, we have both direct and circumstantial evidence of sexual activity engaged in by defendant against D.C., and since she was eight years old at the time, there can be no dispute the activity was criminal in nature. We hold this evidence is more than sufficient to provide a prima facie showing of injury, loss, or harm by a criminal agency, such that defendant's confession may be considered for its full value to fill in the precise nature of the crimes committed against D.C.

Nor are we persuaded by defendant's assertion D.C. "repeatedly denied that any such event occurred." In the SAFE interview, D.C. stated defendant "tried touching" her "private part," which she indicated was her vagina, in the bedroom while she sat on the bed. While he did so, defendant said, "just let me, just let me," to which D.C. said, "no" and was eventually able to run outside. D.C. then stated S.S. went to the gas station to call the police because defendant "kept on touching [her] there." She then said defendant

was "trying to touch [her]." A short time later, D.C. said he did touch her vagina on top of her swimming suit three times while she told him to "stop" and tried to get away from him. The interviewer then asked D.C. whether defendant had done "anything else," whether he had touched her "any other time besides that time," and whether "anything else ever happened." To each question, D.C. answered: "No." She also said defendant did not use "any other part of his body," other than his hand, to touch her vagina. At trial, D.C. clarified defendant did not simply "try to touch" her vagina with his hand while she was on the bed; he did so, and continued to touch her despite her demand for him to stop. D.C. did not remember much of what she had previously told the SAFE interviewer. She did, however, agree with defense counsel's leading questions: "And [defendant] never did anything else to you; isn't that correct?" and, "[i]sn't it true, [D.C.], [defendant] never put his finger in you, did he?" and "[defendant] never gave you a piggy-back ride, correct?" When the prosecutor asked whether she understood what it meant to have something inside of her, D.C. answered: "No."

From the foregoing, it is apparent D.C. did not fully understand what defendant was doing to her on the bed. However, her testimony and statements in the SAFE interview, along with S.S.'s eyewitness testimony, provide more than enough independent evidence that she suffered some injury, loss, or harm by a criminal agency. Her description of being touched on the bed corroborated defendant's statement to police concerning the same conduct, although we know from his statement that he actually pulled her swimming suit to the side and tried to insert his penis in her vagina. In turn, this corroboration lent reliability to defendant's additional confession that he also penetrated D.C.'s vagina while giving her a piggyback ride down the hallway, which he admitted turned him on and probably caused him to then try to have sex with her in the bedroom. Based on this corroboration, we are confident defendant confessed to the penetration, not because of " 'improper police activity or [his] mental instability' " (*Jennings, supra*, 53 Cal.3d at p. 368), but because it actually happened. Nor are we troubled by the fact D.C. did not remember the piggyback ride. She was eight years old at the time of these crimes. By defendant's own statement, the actual penetration while D.C. was on his back was a fleeting event and the penetration was slight.

We conclude there was sufficient evidence, independent of defendant's confession to police, to establish the corpus delicti of sexual penetration.

## II–VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 167.

## DISPOSITION

Defendant's convictions are affirmed. The matter is remanded to the trial court for resentencing with directions to exercise its discretion under rule 4.425 of the California Rules of Court in deciding whether to impose consecutive or concurrent sentences for defendant's crimes. Following resentencing, the trial court shall amend the abstract of judgment and forward a certified copy thereof to the Department of Corrections and Rehabilitation.

Pursuant to Business and Professions Code section 6086.7, subdivision (a)(2), the clerk of this court is ordered to forward a copy of this opinion to the State Bar upon finality of this appeal.[8] Further, pursuant to Business and Professions Code section 6086.7, subdivision (b), the clerk of this court shall notify defendant's trial counsel that the matter has been referred to the State Bar.

Mauro, Acting P. J., and Murray, J., concurred.

A petition for a rehearing was denied May 3, 2016, and appellant's petition for review by the Supreme Court was denied June 29, 2016, S234355. Corrigan, J., did not participate therein.

---

[8] Business and Professions Code section 6086.7, subdivision (a)(2), requires the court to notify the State Bar "[w]henever a modification or reversal of a judgment in a judicial proceeding is based in whole or in part on the misconduct, *incompetent representation*, or willful misrepresentation of an attorney." (Italics added.) Here, the trial court and counsel seemed to be unaware the wrong rule was being applied at the sentencing hearing.